WESTERN UNION TELEGRAPH CO. *v.* WOOD.

(*Knoxville,* September Term, 1945.)

Opinion filed January 5, 1946.

CATES, FOWLER, LONG & FOWLER, of Knoxville, for plaintiff in error, defendant below.

OSCAR ROGERS and FRANK FLYNN, both of Knoxville, for defendant in error.

MR. JUSTICE PREWITT delivered the opinion of the Court.

There was a judgment in the circuit court for $200 for damages for failure to promptly and reasonably deliver a telegram to one Green at Mount Jackson, Virginia. This judgment was affirmed by the Court of Appeals. *Certiorari* has been granted and argument heard at the bar of this Court.

The proof tends to show that on Friday, November 7, 1941, respondent's driver purchased for him a truck load of apples at Mount Jackson, Virginia, from Green. After this purchase Green had something over a thousand bushels of the same kind of apples which he agreed to sell to respondent at 40 cents per bushel if he was notified by noon on Saturday, November 8, 1941. The truck load of apples was brought to Rogersville, Tennessee, on November 8, 1941, and the driver of the truck told Wood of Green's offer. After seeing the apples Wood went to the telegraph office and sent Green a money order for $25 accompanied by the following message:

"Hold Staymans, Black Twigs, Winesaps for forty cents. Wiring $25.00 deposit. Will load soon as possible. Answer Western Union."

The respondent and his uncle testify that that this message and money order were given the defendant company at 8:30 in the morning and that it should have reached Green within an hour. Virginia time is one hour faster than Rogersville time, and a copy of the telegram as offered by the defendant shows that it was sent at 9:30 instead of 8:30. The message and money order were sent by direct wire to Knoxville and from Knoxville to Atlanta, Georgia, and from Atlanta direct to Washington, D. C., where it was received at 11:20 a. m. From Washington it could either be phoned to Mount Jackson direct to Green or sent by Morse Code to the agent of defendant at Mount Jackson. Mount Jackson had a small office and did not pay money orders, but they were accustomed to either have a draft sent from Washington direct to the payee or have the payee call at another nearby office for the money. The Washington agents of the company say that within ten minutes from the time they received the wire they notified their Mount Jackson agent and he in turn notified them to mail the draft from Washington to Green.

The respondent did not receive any answer from his message or money order. He went to the office at Rogersville, twice and had a tracer sent inquiring about the telegram. The respondent sent his driver back to Virginia with the money to get these apples. The driver reached Green's home early Monday morning, November 10, 1941, and found that Green had sold the apples.

Green testified that he had not received any message or notice of a message or money order until he had been informed by respondent's driver that one had been sent. This witness says that he immediately called the defendant company's agent at Mount Jackson by phone and was then for the first time told by the agent of the de-

fendant that a draft for the money order was being sent Green from the defendant's Washington office. Green and the driver then drove to Mount Jackson and to the office of the defendant, where Green was told he would soon get the draft for $25. Green refunded the $25 to the driver. Green then assisted the driver in getting some other apples, but they were inferior and cost more than the ones Green was to save for the respondent. No profit was made by respondent on these apples. The proof shows that if respondent had obtained the thousand bushels of apples he could have made a profit of more than $350 above all costs and expenses. Green further testified that if he had received the telegram he would have held the apples for the respondent. His testimony shows that had he received the telegram that he would have considered himself bound to hold the apples for the respondent.

The defendant's agent at Mount Jackson testified that he called by telephone to Green's home and delivered the telegram. He does not claim that he talked to Green nor does he attempt to tell to whom, if any one, he talked to. He gives no time when he telephoned but says he could tell if he had his records. These records were not produced. We think the jury would have been justified in believing that defendant's agent never delivered the message.

It is contended that there was no money order office at Mount Jackson and that the defendant was not obligated to deliver the message of a receipt of a money order until it could reach the sender by mail from Washington. The original message and money order carried the payee's address ''call by phone.''

We think the very wording of the message informed the defendant of the nature and importance of

the transaction, bringing it within the rule as laid down in *McCollum* v. *Western Union Telegraph Co.*, 180 Tenn. 403, 175 S. W. (2d) 544.

In 62 C. J. 144, it is said: "The merit of telegraphic communication lies in its speed, and it is for this reason that it is resorted to instead of using the more certain and less expensive method of communicating by mail. It is therefore the duty of telegraph companies, which hold themselves out to the world as prepared to furnish this rapid means of communication, to transmit messages promptly, and in the absence of any legal excuse they will be liable for failure to do so."

We think the trial judge properly overruled the defendant's motion for a directed verdict and that there was material evidence to go to the jury.

It results that the judgment of the Court of Appeals is affirmed.